UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| WILLIAM L. SCOTT, | : Case No. 3:16-cv-00405 |
| Plaintiff, | : |
| | : District Judge Thomas M. Rose |
| vs. | : Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff William L. Scott seeks judicial review, pursuant to 42 U.S.C. §405(g), of the Commissioner's final determination that he was not under a disability and, therefore, not eligible to receive Supplemental Security Income. The determination was based mainly on the decision of Administrative Law Judge (ALJ) Benjamin Chaykin.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6). Plaintiff seeks an Order remanding this case for further administrative proceedings or for payment of benefits. The Commissioner asks the Court to affirm ALJ Chaykin's decision.

---
[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. Background

On the date Plaintiff filed his application for benefits, he was 26 years old. This placed him in the category of a "younger" person under Social Security law. *See* 20 C.F.R. §416.963. He has at least a high-school education but minimal work experience and no past relevant work experience. *See* 20 C.F.R. §416.965.

Despite his young age, Plaintiff has experienced many health problems, including Type II diabetes, foot issues (including neuropathy), obesity, hypertension, pseudotumor cerebri, obstructive sleep apnea, narcolepsy, asthma, and kidney stones accompanied by abdominal pain. He has just one kidney—the other was surgically removed. At the time of the ALJ's hearing (in June 2015), he one weighed 420 pounds. (Doc. #6, *PageID#* 81). He is 6′3″ tall. *Id*. Given these measurements, his body mass index was 52.5. *See* http//www.cdc.gov (search for: "adult BMI calculator).

Plaintiff testified during a hearing before ALJ Chaykin that he last worked at a Meijer's store, cutting fruit and vegetables. He was unable to physically do this job because he could not keep up with the pace it required. He explained that pain and neuropathy in his feet slowed him down. (Doc. #6, *PageID* #86).

Plaintiff also been diagnosed with, and treated for, mental-health problems. His diagnoses include major depressive disorder, attention deficit hyperactivity disorder, bipolar disorder, dissociative disorder, mood disorder, social phobia, generalized anxiety disorder, and personality disorder with borderline and narcissistic features. Plaintiff described, during the ALJ's hearing, his psychological impairments as depression and "anti-disestablishment" disorder, which, he said, "falls under the same category as

bipolar. But for me it's almost like hallucinations. Sometimes I will see people yelling and screaming at me. It matches their lip movement, their facial features, but they'll look right at me and they'll scream and yell and say horrible things. And I'll think that I'm talking quietly and politely..., but in reality I'm screaming, yelling. I've been known to get physical, and I have absolutely no control on what's going on." *Id*. at 94-95. He further explained, "I don't like to be around people, especially if something's gone on like I haven't been able to get my medication from the pharmacy, it scares me with the anti-disestablishment I have no idea what I'm saying. I legitimately could be screaming at everyone here …, and that terrifies me, so I don't—I'm scared to be around people. I'm afraid of what I'll do." *Id*. at 101. This is true even when he has taken his medications. *Id*. Plaintiff also testified about Phil, "a spirit that lives inside of [him]." *Id*. at 102. He also explained, "Phil's a part of me." *Id*. When asked why he believes Phil is a part of him, he answered, "I went through rituals to become one with him. And I hear him talk to me often. And sometimes he runs the body for me. We share it." *Id*. He talks with other voices too. It happens daily.

The final witness at the ALJ's hearing, a vocational expert, testified that a significant number of jobs exist in the national economy for a hypothetical person who was limited as follows:

> Hypothetical [person] would be limited to lifting 20 pounds occasionally and up to 10 pounds frequently; standing and walking up to six hours; sitting up to six hours; no climbing of ropes, scaffolds or ladders; occasional climbing of ramps and stairs; frequent crawling; no exposure to dangerous hazards such as unprotected heights or dangerous equipment; limited to performing simple, routine and repetitive tasks, but

3

> not at a production rate pace or strict quota; occasional
> interaction with supervisors, coworkers, and no interaction
> with the public; limited to a static work environment with few
> changes in the work setting; limited to occasional push, pull,
> and foot controls; and no commercial driving as part of job
> duties.

*Id*. at 107-08.

Turning to Plaintiff's medical records, his long-term treating psychiatrist Dr. Carroll opined in November 2014 that Plaintiff was markedly impaired in nearly every area of mental-work functioning. *Id*. at 550-52. Dr. Carroll also concluded that Plaintiff is likely to have partial or full-day unscheduled absences from work occurring 5 or more days per month. *Id*. at 552. Dr. Carroll recognized that Plaintiff's condition would likely deteriorate if he is under the stress of working full time. *Id*. According to Dr. Carroll, "This client experiences problems with attention and anger issues and stress causes him to escalate." *Id*. And, Dr. Carroll noted that Plaintiff's mental-health conditions have existed continuously since February 21, 2013. *Id*.

In February 2016, Dr. Carroll reviewed Plaintiff's treatment records and noted that they "are useful to record symptoms but are not complete and do not address the areas of mental residual functional capacity." *Id*. at 680. He verified that his previous assessment of Plaintiff's mental residual functional capacity was "correct and accurate." *Id*. Dr. Carroll explained:

> In my interactions with Mr. Scott in 2015 and 2016,
> Mr. Scott is hostile, demeaning and on one occasion he is
> physically intimidating. He pushed an office desk toward me
> in the office. In social interaction, he is markedly impaired.
> In 2014 and 2015, he interrupts the interview and engages in
> tirades and expands upon his life events. It is very difficult to

4

> have him focus on the pertinent topics in the interview. Thus,
> he has marked impairment in concentration and persistence.
> When he is redirected, he becomes defensive and hostile.
> Thus, he has marked impairment in adaptation.

*Id.* at 680-81. Dr. Carroll also concluded that Plaintiff is "markedly impaired due to Bipolar Disorder." *Id.* at 681.

In November 2013, a one-time consulting examiner, psychologist Dr. Boerger, diagnosed Plaintiff with mood disorder, and schizoid personality traits. He described his prognosis for Plaintiff as follows: "Because of the longstanding nature of severity of his emotional difficulties, symptoms are likely to continue for the indefinite future." *Id.* at 502. Dr. Boerger also opined, in part, that Plaintiff's concentration is likely to be variable, and his "eccentric thought processes and mannerisms are likely to cause difficulties in forming close relationships…." *Id.* at 502-03.

In December 2013, record-reviewing psychologist Dr. Finnerty reported that Plaintiff was either not significantly limited or moderately limited in the areas of mental-work functioning. *Id.* at 156-57. One month later, psychologist Dr. Steiger reviewed the record and opined that Plaintiff was moderately or not significantly limited in the areas of mental-work functioning. *Id.* at 171-73.

### III. "Disability" and The ALJ's Decision

Plaintiff's eligibility to receive Supplemental Security Income hinged on whether he was under a "disability" as defined by social security law. *See* 42 U.S.C. §1381a,; *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986). Narrowed to its statutory definition, a person is "considered to be disabled … if he [or she] is unable to engage in

5

any substantial gainful activity by reason of any medically determinable physical or mental impairment which … can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A).

As indicated previously, it fell to ALJ Chaykin to evaluate the evidence and determine whether Plaintiff was under a disability. He did so by conducting the 5-step sequential evaluation mandated by Social Security regulations. *See* 20 C.F.R. §416.920(a)(4).

ALJ Chaykin found (step 2) that Plaintiff he has the severe impairments of "asthma, diabetes mellitus, essential hypertension, sleep-related breathing disorder, obesity, affective disorders, personality disorders, and an anxiety disorder." (Doc. #6, *PageID* #62). He concluded (step three) that Plaintiff's impairments do not automatically constitute a disability because they do not meet or equal one of the disabilities described in the Commissioner's Listings. *Id.* at 62-64; *see* Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. ALJ Chaykin found (step 4) that the most Plaintiff could do despite his impairments—his residual functional capacity—was light work with 7 physical limitations and the following mental-work limitations: he is "(8) limited to limited to performing simple, routine, and repetitive tasks, but not at a production rate pace or strict quota; (9) occasional interaction with supervisors, coworkers and no interaction with the public; (10) he is limited to a static work environment, with few changes in the work setting; (11) occasional pushing and pulling and use of foot controls; (12) no commercial driving as part of job duties; and (13) in addition to normal breaks, he will be off task 5% of the workday." (Doc. #6, *PageID* #64).

6

As will be discussed below, the final limitation—"off task 5% of the workday"—plays a prominent role in the present judicial review of the ALJ Chaykin's decision.

In the end, the ALJ concluded that Plaintiff was not under a disability because, despite his impairments, he could still perform a significant number of jobs in the national economy. as indicated above, the ALJ He ultimately concluded that Plaintiff was not under a b

## IV. Judicial Review

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Chaykin's decision—is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when a "'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir.

2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

V.  **Discussion**

Plaintiff contends that the ALJ failed to comply with the regulations and ruling applicable to evaluating the opinions of his treating mental-health specialist, Dr. Carroll. He maintains that Dr. Carroll's opinions entitled to great, if not controlling, weight.

The Commissioner argues that the ALJ was not required to provide an exhaustive factor-by-factor analysis when weighing Dr. Carroll's opinions and properly found that Dr. Carroll's opinions were unsupported by the longitudinal evidence, his own treatment notes, mental-health treatment, and treatment with prescribed medication.

Social security regulations require ALJs to generally extend "greater deference … to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). A treating physician or psychologist's opinions must be given controlling weight when (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723. If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*,

486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). These factors likewise apply when an ALJ weighs the opinions of non-treating medical sources. *Gayheart*, 710 F.3d at 376.

The Regulations require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

The ALJ placed "little weight" on Dr. Carroll's opinions. The ALJ acknowledged that Dr. Carroll was Plaintiff's treating physician but the ALJ reasoned that Dr. Carroll's opinions were not supported by the longitudinal record or his own treatment notes. To support this, the ALJ provided an example from one page of Dr. Carroll's treatment notes in July 2014. (Doc. #6, *PageID* #67) (citing Exh. 15/18; *PageID* #570). The ALJ then referred to Plaintiff's hospitalization in September 2013, noting that it was "only for vague suicidal ideations during a time in [Plaintiff's] life where he did not have a place to stay and his car had become infested with bugs. Although this was unfortunate, it does not justify the marked or disabling limitations suggested in Dr. Carroll's opinion." *Id.* at 67-68. The ALJ did not provide further explanation of why he placed "little weight" on Dr. Carroll's opinions.

9

The ALJ's evaluation of Dr. Carroll's opinions did not acknowledge or meaningfully consider whether his opinions were entitled to controlling weight under the treating physician rule. Instead, the ALJ combined the two-step evaluation procedure mandated by regulation, into a single discussion of the "consistency" factor. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6). This constitutes error because the "consistency" factor, along with the others listed in the regulations, *id*., "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart,* 710 F.3d at 376 (emphasis added) (citation omitted). Indeed, "[t]he source of the opinion… dictates the process by which the Commissioner accords it weight." *Id*. The ALJ's procedure ignored this. Instead, his use of the single factor of consistency leaves it uncertain (at best) whether he addressed, or even considered, the factors applicable to determining whether "controlling weight" was due this treating psychiatrist's opinions. This uncertainty conflicts with the requirement that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). As the Sixth Circuit has explained:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits

10

meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotation marks and citations omitted). Although the Commissioner is correct to state that, in general, the regulations did not require the ALJ to provide "an exhaustive factor-by-factor analysis" of Dr. Carroll's opinions, *Francis v. Comm'r Soc. Sec. Admin.*, 414 F.App'x 802, 804 (6th Cir. 2011), the regulations did require the ALJ to provide "good reasons" for placing little weight on this treating psychiatrist's opinions. The ALJ did not meet this requirement and therefore failed to apply the correct legal criteria to Dr. Carroll's opinion.

Additionally, the ALJ's application of the consistency factor effectively weighed Dr. Carroll's opinions under the same legal criteria as he weighed the opinions of the non-treating doctors. This constituted error. Again, "[t]he source of the opinion… dictates the process by which the Commissioner accords it weight." *Gayheart*, 710 F.3d at 376.

The ALJ also erred by overlooking or ignoring significant evidence. Dr. Carroll's explained, in February 2016, that Plaintiff's treatment records "are useful to record symptoms but are not complete and do not address the areas of mental residual functional capacity." *Id*. at 680. Dr. Carroll also reported, "On January 28, 2016, Mr. Scott was clinically worse due to explosive anger and mood swings…." *Id*. Dr. Carroll described Plaintiff's behavior in 2015 and 2016 as "hostile and demeaning and on one occasion, he is physically intimidating. He pushed an office desk toward me in the office." *Id*. This and Dr. Carroll's remaining explanations in his letter tend to support his opinions that Plaintiff had marked limitations in the areas of social interaction,, concentration and

11

persistence, and adaptation, at a minimum. *See id*. at 680-81. It was error for the ALJ not to discuss such Plaintiff-favorable evidence when deciding to place little weight on Dr. Carroll's opinions. *See Gentry,* 741 F.3d at 724 (citing *Minor v. Comm'r of Soc. Sec.*, 513 Fed Appx. 417, 435 (6th Cir. 2013) ("reversing where the ALJ 'cherry-picked select portions of the record' rather than doing a proper analysis"); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 Fed Appx. 771, 777 (6th Cir.2008) ("finding error where the ALJ was 'selective in parsing the various medical reports'"). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)) (internal citations and quotation marks omitted).

Accordingly, the ALJ did not apply the correct legal criteria to, and substantial evidence does not support his evaluation of, Dr. Carroll's opinions.[2]

## VI. Remand

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen,* 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*,

---

[2] In light of the above review and the resulting need for remand of this case, an analysis of the parties' remaining arguments is unwarranted.

12

378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and evaluate Plaintiff's disability claim under the required five-step sequential analysis to

determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff William L. Scott was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

January 30, 2018					*s/Sharon L. Ovington*
						Sharon L. Ovington
						United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).